```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CORNELIUS J. KILGARRIFF, IV, | 1:18-cv-10120-NLH-AMD |
| Plaintiff, | **OPINION** |
| v. | |
| THOMAS I. STRUNK, MATEUSZ RYBA, COLBY MELOY, ROBERT PATANELLA, TIM SHARPE, STEPHEN SCHAFFER, CHAD CALLAHAN, OCEAN CITY POLICE DEPARTMENT, CITY OF OCEAN CITY, NJ, JOHN DOES 1-5, | |
| Defendants. | |

**APPEARANCES**:

SALVATORE P. DIFAZIO
84 PARK AVENUE
GAVEL HALL
FLEMINGTON, NJ 08822

   *On behalf of Plaintiff*

A. MICHAEL BARKER
BARKER, GELFAND & JAMES
LINWOOD GREENE
210 NEW ROAD
SUITE 12
LINWOOD, NJ 08221

   *On behalf of Defendants*

**HILLMAN, District Judge**

This matter concerns claims by Plaintiff that an Ocean City, New Jersey police officer used excessive force when he arrested Plaintiff at a party where there was underage drinking.

Presently before the Court is the motion of Defendants to dismiss Plaintiff's claims against them on various bases.[1] For the reasons expressed below, Defendants' motion will be granted.

## BACKGROUND

On June 21, 2016, Plaintiff, Cornelius J. Kilgarriff, IV, who was 18 years old at the time, was a guest at a party in a home in Ocean City, New Jersey. Plaintiff claims that several officers entered the home because they suspected that underage drinking was occurring. According to Plaintiff, Defendant Thomas I. Strunk, an Ocean City police officer, opened the door to the room where Plaintiff was located and pointed his gun in Plaintiff's face. Plaintiff questioned why it was necessary for Strunk to act in that manner. Ultimately, Strunk arrested Plaintiff and placed him in handcuffs.

Plaintiff claims that after he was handcuffed, Strunk violently assaulted him on the front porch with his fists, arms and knees. Plaintiff claims that Strunk then violently threw Plaintiff's head against a pole on the porch. As Strunk walked Plaintiff to the patrol car, Plaintiff claims that he protested that Strunk's actions constituted police brutality, and in response, Strunk slammed Plaintiff's head and body into the patrol car before forcing him into the back seat. Plaintiff

---

[1] Defendant Thomas I. Strunk has not moved to dismiss Plaintiff's claim of excessive force against him in his individual capacity.

2

claims that during this entire encounter he was handcuffed and did not resist.  Plaintiff also claims that other Ocean City police officers, Defendants Mateusz Ryba, Colby Meloy, Robert Patanella, and Tim Sharpe, should have known that Strunk's use of force was excessive and intervened to stop him.

Plaintiff was taken to the police station, processed, and then released in the middle of the night.  Plaintiff claims that no one asked him about his injuries.  He obtained medical treatment the next day.

Plaintiff alleges that his constitutional rights were violated by Strunk's use of excessive force and the other officers' failure to intervene.  Plaintiff also alleges that Ocean City and the Ocean City Police Chief, Defendant Chad Callahan, as well as Sergeant Stephen Schaffer, violated his constitutional rights by failing to train and supervise Ocean City officers in the proper use of force, and by fostering a policy and custom of using unlawful force.  <u>Monell v. Dept. of Social Services of City of New York</u>, 436 U.S. 658, 694 (1978).

Ocean City[2] has moved do dismiss Plaintiff's <u>Monell</u> claim as

---

[2] The Ocean City Police Department must be dismissed, as it is not a separate corporate entity for purposes of liability for alleged constitutional torts. <u>Hernandez v. Borough of Palisades Park Police Dept.</u>, 58 F. App'x 909, 912 (3d Cir. 2003) (citing <u>Bonenberger v. Plymouth Township</u>, 132 F.3d 20, 25 n.4 (3d Cir. 1997) (explaining that "police departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself").

3

boilerplate pleading lacking any factual underpinning.[3]  For the same reason, the Defendant officers, except for Strunk, have moved to dismiss Plaintiff's failure to intervene claims, and Callahan and Schaffer have moved to dismiss Plaintiff's supervisory liability claims.[4]  Plaintiff has opposed Defendants' motion, arguing that Defendants are sufficiently on notice of his claims and that he is entitled to discovery to flush out the facts to support his claims.

## DISCUSSION

### A. Subject Matter Jurisdiction

Plaintiff has brought claims pursuant to 42 U.S.C. § 1983.  This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. § 1331.

### B. Standard for Motion to Dismiss

When considering a motion to dismiss a complaint for

---

[3] Ocean City has also moved to dismiss Plaintiff's punitive damages claim against it.  Because the Court will dismiss Plaintiff's municipal liability claims against Ocean City, Plaintiff's punitive damages claim against Ocean City falls away as well.  The Court notes, however, that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

[4] The individual defendants have also moved to dismiss claims lodged against them in their official capacities because those claims are effectively claims against Ocean City.  Plaintiff has not disputed that argument.  See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690 n.55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

4

failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005). It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under the liberal federal pleading rules, it is not necessary to plead evidence, and it is not necessary to plead all the facts that serve as a basis for the claim. Bogosian v. Gulf Oil Corp., 562 F.2d 434, 446 (3d Cir. 1977). However, "[a]lthough the Federal Rules of Civil Procedure do not require a claimant to set forth an intricately detailed description of the asserted basis for relief, they do require that the pleadings give defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Baldwin Cnty. Welcome Ctr. v. Brown, 466 U.S. 147, 149-50 n.3 (1984) (quotation and citation omitted).

A district court, in weighing a motion to dismiss, asks "'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" Bell Atlantic v. Twombly, 550 U.S. 544, 563 n.8 (2007) (quoting Scheuer v. Rhoades, 416 U.S. 232, 236 (1974)); see also Ashcroft v. Iqbal, 556 U.S. 662, 684 (2009) ("Our decision in

5

Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail-in-the-coffin for the 'no set of facts' standard that applied to federal complaints before Twombly.").

Following the Twombly/Iqbal standard, the Third Circuit has instructed district courts to apply a two-part analysis in reviewing a complaint under Rule 12(b)(6). First, the factual and legal elements of a claim should be separated; a district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Fowler, 578 F.3d at 210 (citing Iqbal, 129 S. Ct. at 1950). Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "'plausible claim for relief.'" Id. (quoting Iqbal, 129 S. Ct. at 1950). A complaint must do more than allege the plaintiff's entitlement to relief. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (stating that the "Supreme Court's Twombly formulation of the pleading standard can be summed up thus: 'stating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

6

discovery will reveal evidence of' the necessary element").  A court need not credit either "bald assertions" or "legal conclusions" in a complaint when deciding a motion to dismiss. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429-30 (3d Cir. 1997).  The defendant bears the burden of showing that no claim has been presented.  Hedges v. U.S., 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999).  A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."  Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56.  Fed. R. Civ. P. 12(b).

**C. Analysis**

Plaintiff claims that Ocean City is liable for his damages because it failed to properly train its officers on the

appropriate use of force and because it fostered a policy or custom of condoning the excessive use of force, among other institutional policy and training failures. Ocean City argues that Plaintiff's municipal liability claims fail because they do not satisfy the Twombly/Iqbal standard. The Court agrees.

Under Monell, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Liability may be imposed against a municipality under Monell "when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the 'moving force' behind the constitutional tort of one of its employees." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citations omitted). "[M]unicipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986). A policymaker is a person who is "responsible for establishing final government policy

respecting" the activity in question and "whether an official had final policymaking authority is a question of state law." Id.

A § 1983 claim based on the policymaker's failure to train or supervise employees "must amount to 'deliberate indifference to the rights of persons with whom the [untrained or unsupervised employees] come into contact.'" Connick v. Thompson, 563 U.S. 51, 61 (2011) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). "[W]hen city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." Connick, 563 U.S. at 61. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Id.

The Third Circuit recently clarified the standards for adequately pleading a policy or custom claim and a failure-to-train claim under Monell. For a policy or custom claim, in addition to pleading that a policy or custom inflicted the injury in question, a plaintiff must also allege that the policy or custom was the proximate cause of his injuries. Estate of Roman v. City of Newark, 914 F.3d 789, 798 (3d Cir. 2019) (citations omitted) (explaining that "[a]lthough a policy or

9

custom is necessary to plead a municipal claim, it is not sufficient to survive a motion to dismiss"). To do this, a plaintiff must demonstrate an "affirmative link" between the policy or custom and the particular constitutional violation he alleges, such as where the plaintiff shows that the municipality "had knowledge of similar unlawful conduct in the past, . . . failed to take precautions against future violations, and that [its] failure, at least in part, led to [his] injury." Id. (quotations and citation omitted). A plaintiff does not need to identify a responsible decisionmaker in his pleadings, and a plaintiff is not required to prove that the custom had the municipality's formal approval. Id. (citation omitted).

For a failure-to-train claim, a plaintiff must demonstrate that a municipality's failure to train its employees reflects a deliberate or conscious choice. Id. (quotations and citation omitted). A plaintiff sufficiently pleads deliberate indifference by showing that "(1) municipal policymakers know that employees will confront a particular situation[,] (2) the situation involves a difficult choice or a history of employees mishandling[,] and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Id. (quotations and citations omitted).

The Third Circuit in Roman used these guidelines to assess the pleading sufficiency of the plaintiff's Monell claims

against the City of Newark. The Third Circuit found that the plaintiff had not pled an unconstitutional policy because his complaint failed to refer to an official proclamation, policy, or an edict. Id. The Third Circuit found, however, that the plaintiff sufficiently pleaded a claim for an unconstitutional custom, as well as a claim that Newark failed to train, supervise, and discipline its officers. Id. at 799.

In addition to alleging that Newark had "a pattern or practice of constitutional violations in areas including . . . arrest practices," and that Newark "had notice of this practice, as it received complaints against officers accused of . . . conducting improper searches and false arrests," the complaint attached a press release, a newspaper article, and a consent decree. Those documents collectively provided that Newark was under the supervision of a federal monitor after Roman's arrest, and that the monitor would oversee reforms in several areas, including searches, arrests, and the intake and investigation of misconduct complaints. Id.

More specifically, the consent decree covered the same type of conduct the plaintiff alleged, as it prohibited officers from relying on information known to be materially false or incorrect to justify a warrantless search or to effect an arrest, mandated officers to collect data on consent, the type of search, and a brief description of the facts creating probable cause, and

11

required the police department to investigate police misconduct with special emphasis on allegations of criminal misconduct, false arrest, planting evidence, and unlawful searches. Id. (quotations and alteration omitted).

The newspaper article and the consent decree also provided factual support to the plaintiff's failure-to-train claim, as the head of Newark's police union conceded the last training he received was in 1995, when he first joined the Newark Police Department. Id. at 799-800 (quotations omitted). The consent decree further indicated that Newark police officers in general were not trained on the requirements of the Fourth Amendment and related law, it touched on supervisory review of unlawful searches and arrests requiring desk lieutenants and unit commanders to review searches that appeared to be without legal justification and arrests that were unsupported by probable cause, and it provided disciplinary measures for police officers who engaged in unlawful searches and false arrests. Id. at 800 (quotations and alteration omitted).

The Third Circuit determined that at the pleadings stage, the plaintiff's allegations, along with the references to and content of the press release, newspaper article, and consent decree, were strong enough to survive a motion to dismiss. Id. In reversing the district court's dismissal of the plaintiff's complaint, the Third Circuit concluded, "viewing the pleadings

and properly associated documents in the light most favorable to Roman, there are claims plausible enough to withstand a motion to dismiss. We think there is one - the municipal liability claim. And the [district court] did not have to look beyond the amended complaint and supporting documents to glean these facts." Id. at 803.

The Third Circuit's decision in Roman illustrates why Plaintiff's municipal liability claims are not sufficiently pleaded here. Plaintiff alleges that Ocean City, through police chief Callahan, maintained an "official policy, practice or custom" of failing to properly train its police officers to refrain from "(1)unlawfully and maliciously assaulting, arresting and harassing citizens; (2) intentionally, recklessly and/or negligently misrepresenting the facts of arrests and/or other police-citizen encounters; (3) falsifying police and/or other official records; (4) withholding and/or mishandling evidence; (5) making false arrests and/or (6) using unreasonable and excessive force." (Docket No. 1 at p. 10.) Plaintiff further claims that this same "official policy, practice or custom" fostered "superficial and shallow Internal Affairs process which ignored evidence and patterns of police misconduct on individual and department levels," where Ocean City failed to "adequately track excessive force complaints, administrative complaints, and/or use of force incidents." (Id.)

Plaintiff also alleges that Ocean City was aware of numerous similar police citizen encounters "whereby they customarily and frequently subjected citizens held in custody to physical and mental abuse; unlawfully and maliciously assaulted, arrested and harassed citizens; intentionally, recklessly and/or negligently misrepresented the facts of arrests and/or other police citizen encounters; falsified police and/or other official records; made false arrests, mishandled and/or withheld evidence and/or used unreasonable and excessive force on citizens/arrestees." (Id. at 11.) Plaintiff claims that Ocean City was aware of all these failures, but did nothing to remedy or rectify them, all of which led to his injuries. (Id.)

The problem with Plaintiff's allegations is that they are wholly conclusory without one tidbit of factual support. Simply because Plaintiff was arrested, allegedly subjected to excessive force by one Ocean City officer, who allegedly was not stopped by his fellow officers on the scene, does not, by itself, provide a factual underpinning to Plaintiff's claims of a city-wide policy, custom, or training failure that proximately caused Plaintiff's injuries. The plaintiff in Roman advanced the same kind of municipal liability claims, but the difference between the complaint in Roman and the one here is that in addition to the plaintiff's allegations of a policy, custom, and failure-to-train, the plaintiff in Roman backed up his claims with facts,

14

which, when accepted as true, provided support as to the plausibility of his Monell claims.

Plaintiff argues that his claims should not be dismissed because he needs discovery in order to substantiate his claims. Plaintiff further argues that his complaint satisfies his obligation to provide Ocean City with notice that he is seeking to hold it liable for their unconstitutional policies, customs, and training failures. That is not the standard required by Twombly/Iqbal. Even though in order to survive a motion to dismiss Plaintiff is not required to plead the level of proof needed to ultimately prove his municipal liability claims, Plaintiff must do more than he has pleaded here. Cf. Roman, 914 F.3d at 806 ("While the proof developed to support these allegations may or may not be persuasive to a finder of fact, they are enough to survive dismissal at this stage.").

In addition to the direction provided by the Third Circuit in Roman, the U.S. Supreme Court's decision in Iqbal provides additional support for why Plaintiff's claims are deficient, and this Court has set forth the reasoning of Iqbal when dismissing similarly pled Monell claims in several other cases. See, e.g., Schweizer v. Middle Township Mayor and Governing Body, 2018 WL 2002792, at *4 (D.N.J. 2018); Estate of Bard v. City of Vineland, 2017 WL 4697064, at *4 (D.N.J. 2017) (discussing Zampetis v. City of Atlantic City, 2016 WL 5417195, at *6

15

(D.N.J. 2016)). In <u>Zampetis</u>, this Court explained that in <u>Iqbal</u>, the complaint claimed that Attorney General John Ashcroft and FBI Director Robert Mueller violated Iqbal's equal protection rights by condoning and agreeing to subject Iqbal to harsh conditions of confinement solely on account of his race, religion and/or national origin. The U.S. Supreme Court held that the allegation that Ashcroft and Mueller discriminated against him "on account of [his] religion, race, and/or national origin and for no legitimate penological interest" was a conclusory and formulaic recitation of the elements of a constitutional discrimination claim, and could not be assumed to be true. <u>Zampetis</u>, 2016 WL 5417195, at *6 (citing <u>Iqbal</u>, 556 U.S. at 681). The Supreme Court found that the factual allegation that Ashcroft and Mueller adopted a policy of approving harsh conditions of confinement for post-September 11 detainees until the FBI cleared them did not plausibly suggest that Ashcroft and Mueller purposefully discriminated against the detainees because of their race, religion or national origin and, therefore, did not state a claim for purposeful discrimination claim against these high ranking defendants merely because of their supervisory roles. <u>Id.</u>

As in <u>Iqbal</u>, and also in <u>Schweizer</u>, <u>Bard</u> and <u>Zampetis</u>, Plaintiff's conclusory contention that an infirm policy, or custom, or training practice by Ocean City caused his injuries

16

is insufficient to properly plead a viable Monell claim. Plaintiff is required to provide facts – not simply regurgitate all the legal bases for liability under Monell - to support his contentions and adequately plead his claims against the municipality. Because of Plaintiff's failure to do so, Plaintiff's municipal liability claims must be dismissed.

This analysis is equally applicable to Plaintiff's supervisor liability claims against Callahan and Schaffer, and his failure to intervene claims against the other officers. As for Callahan and Schaffer, Plaintiff claims that they either directed the officers to violate Plaintiff's constitutional rights, or had knowledge of and acquiesced to their subordinates' violations. (Docket No. 10 at 8.) Plaintiff also restates his claims of municipal policy, custom, and failure-to-train claims against Callahan and Schaffer individually. (Id.) With regard to the other officer defendants, Plaintiff collectively claims that Ryba, Meloy, Patenella and Sharpe had a reasonable opportunity to intervene with Strunk's excessive use of force while interacting with Plaintiff, and they improperly failed to do so. (Id. at 7.)

Plaintiff's collective and conclusory allegations against the individual defendants, without any distinction between the defendants or factual support, fail to state cognizable claims

17

under § 1983, and must therefore be dismissed.[5]  See Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that to properly plead a claim against an individual government defendant in a civil rights action, the complaint must indicate how that defendant had personal involvement in the alleged wrongdoing, which can be shown through allegations of personal direction or of actual knowledge and acquiescence); Iqbal, 556 U.S. at 676 ("Because vicarious liability is inapplicable to [] § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.").  Separating out alleged facts from legal conclusions, Plaintiff has failed to

---

[5] A supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. Santiago v. Warminster Tp., 629 F.3d 121, 129 (3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004)).

"'Courts have held that a police officer has a duty to take reasonable steps to protect a victim from another officer's use of excessive force, even if the excessive force is employed by a superior.'" Norman v. Haddon Township, 2017 WL 2812876, at *5 (D.N.J. 2017) (quoting Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002)) (other citation omitted).  A police officer is liable for failure to intervene under § 1983 if the plaintiff demonstrates that: (1) the officer had reason to know that excessive force was being used; and (2) the officer had a realistic opportunity to intervene.  Id. (citing Smith, 293 F.3d at 650).

alleged sufficient facts to make out a plausible claim that the other officers had reason to know that excessive force was being used and had a realistic opportunity to intervene.  Plaintiff must plead facts not merely recite the names of the defendants within the context of the elements of the claim.  (Docket No. 1 at 5., para. 26 and 27.)

## CONCLUSION

Based on the foregoing, Plaintiff's claims against Ocean City and the individual defendants will be dismissed, leaving Plaintiff's excessive force claim against Strunk in his individual capacity.  The dismissal of Plaintiff's claims for failure to intervene, supervisor liability, and municipal liability will be without prejudice.  If discovery in this matter reveals facts to support the dismissed claims, Plaintiff may move for leave to amend his complaint.

An appropriate Order will be entered.


Date: March 31, 2019      s/ Noel L. Hillman
At Camden, New Jersey      NOEL L. HILLMAN, U.S.D.J.